UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**LANDON BRYCE MITCHELL,**<br><br>Defendant. | Crim. Action No. 21CR508 (BAH) |

### MR. MITCHELL'S MOTION TO DISMISS COUNT SIX

Mr. Mitchell is charged by Indictment with various offenses stemming from his alleged participation in the events at the Capitol on January 6, 2021. Count Six of the Six-Count Indictment charges him with violating Title 40 USC § 5104(e)(2)(G). Mr. Mitchell moves this Court to dismiss count Six, charging with him with Parading and Picketing, in violation of 40 USC § 5104 (e)(2)(G).

### Argument

Count Six of the Indictment charges Mr. Mitchell as follows:

> On or about January 6, 2021, within the District of Columbia, Mitchell willfully and knowingly paraded, demonstrated and picketed in a Capitol Building. (**Parading, Demonstrating, or Picketing in a Capitol Building,** in violation of Title 40, United States Code, Section 5104(2)(G)).

An information must be a "plain, concise, and definite written statement of the

essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A criminal defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(3).

## I. Section 5104(e)(2)(G) is unconstitutional on its face.[1]

Mr. Mitchell is charged with violating 40 U.S.C. § 5104(e)(2)(G), which states that "An individual or group of individuals may not willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings." The statute is both overbroad and unconstitutionally vague. Accordingly, this Court should dismiss Count Six of the Criminal Information which charges that Mr. Mitchell "willfully and knowingly paraded, picketed, and demonstrated in a Capitol Building" on or about January 6, 2021.

The First Amendment provides that "Congress shall make no law ... abridging ... the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Criminal statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston v. Hill*, 482 U.S. 451, 459 (1987). "The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the

---

[1] Mr. Mitchell does not waive any as-applied challenges, but he recognizes that they are premature at this juncture. *See United States v. Andries*, No. CR 21-93 (RC), 2022 WL 768684, at *1 (D.D.C. Mar. 14, 2022).

2

existence of a penal statute susceptible of sweeping and improper application." *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 432–33 (1963).

## II. Section 5104(e)(i)(G) is substantially overbroad.

Section 5104(e)(2)G) flatly prohibits all parading, demonstrating, and picketing in a Capitol Building. In the First Amendment context, "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (*quoting Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6 (2008)). In conducting an overbreadth analysis, a court must first construe the statute. *United States v. Williams*, 553 U.S. 285, 293 (2008). The next step is to ask whether the statute, properly construed, "criminalizes a substantial amount of protected expressive activity." *Id.* at 297; *United States v. Montgomery*, No. CR 21-46 (RDM), 2021 WL 6134591, at *23 (D.D.C. Dec. 28, 2021).

The plain language itself is strikingly broad, covering enormous swaths of protected First Amendment activity. The subsection does not limit itself to disruptive speech, protests, gatherings, or even audible oral expressions of ideas. The history of the law further shows the breadth of its prohibitions and makes clear that Mr. Mitchell's contentions are well-founded ones.

During a statutory revision in 1967, Representative O'Neal stated, "I am a little bit disturbed about the language . . . wherein the proposed legislation, if adopted, would make it a violation to parade, demonstrate, or picket within any of the Capitol buildings." Congressional Record-House (October 19, 1967) at 29389, *available at*

https://www.govinfo.gov/content/pkg/GPO-CRECB-1967-pt22/pdf/GPO-CRECB-1967-pt22-2-1.pdf (last accessed June 1, 2022) (hereinafter "Congressional Record"). Representative Bingham expressed concerns about overbreadth:

> I am deeply concerned about the broad scope, vague language, and possible interference with first amendment rights of the bill before us today. It was so hastily conceived and reported out of committee that no official views of the Justice Department or the District government were available. Moreover, there seems to be no disposition on the part of the bill's supporters to accept clarifying amendments.

Congressional Record at 29394. He also commented on the overly broad law's potential impact on peaceful, quiet visitors, describing the law as "a case of using a shotgun to eliminate a gnat." Congressional Record at 29395.

The past enforcement policy likewise shows the overbreadth of the language. *Cf. Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) ("In evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."). One Capitol Police regulation interpreting a previous codification of the instant statute was held unconstitutional in a case where a pastor was prohibited from quietly praying—under imminent threat of arrest—in the Capitol building. *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 53 (D.D.C. 2000). The Capitol Police regulation explained that demonstration activity included:

> parading, picketing, speechmaking, holding vigils, sit-ins, or other expressive conduct that convey[s] a message supporting or opposing a point of view or has the intent, effect or propensity to attract a crowd of onlookers, but does not include merely wearing Tee shirts, buttons or other similar articles of apparel that convey a message.

4

*Id.* (quoting Traffic Regulations for the Capitol Grounds § 158). The pastor challenged that regulation, arguing it was unconstitutional, and he succeeded on his motion for summary judgment.

The *Bynum* court reasoned that, while the regulation was justified to an extent to serve the statutory purpose of preventing disruptive conduct in the Capitol Building, "it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive, such as 'speechmaking ... or other expressive conduct.'" *Bynum*, 93 F. Supp. 2d at 57 (quoting Traffic Regulations for the Capitol Grounds § 158 ). The court held that the regulation violated due process, stating that:

> It does not provide either permissible or sufficient guidance under the statute it purports to implement to survive a constitutional challenge. In fact, the definition of "demonstration" in the regulation—encompassing all expressive conduct, whether disruptive or not—appears to expand the restrictive powers given by statute to the Capitol Police rather than limit or guide them. This definitional "guidepost" thus has the potential to squelch nearly any type of expressive conduct, whether or not it is actually a demonstration, and may sweep within its scope expression that is protected by the First Amendment. The regulation therefore is both unconstitutionally overbroad and unconstitutionally vague.

*Bynum*, 93 F. Supp. 2d at 58. The court focused on the regulation rather than the statute itself, operating under the premise that the statute was limited to disruptive conduct. *Id.* at 57-58.

The premise that the statute is limited to disruptive conduct, however, was and remains demonstrably false. The text does not include such a limitation, and the legislative history shows that Congress did not intend to include one. At the time of the 1967 revision, Representative Edwards expressed that he believed the "parading,

5

picketing, or demonstrating" language violated the First Amendment because it was *not* limited to disorderly or disruptive conduct. Congressional Record at 29392. Representative Cramer stated that to add "with intent to disrupt the orderly conduct of official business" would "gut[ ] the section," eliminating any doubt as to whether the failure to include limiting language was inadvertent. *Id.* at 29394.

Perhaps unsurprisingly, the statute continues to give rise to interpretations just like the regulation at issue in *Bynum*. The United States Capitol Police Guidelines now offer the following interpretation:

> Demonstration activity is defined as any protest, rally, march, vigil, gathering, assembly or similar conduct engaged in for the purpose of expressing political, social, religious or other similar ideas, views or concerns protected by the First Amendment of the United States Constitution.[2]

Ironically, the current policy is even broader than the unconstitutional regulation: the former does not contain even the meager limitations that the latter did. It reads like a too-easy bar exam essay prompt with an astonishing lack of self-awareness, directly defining demonstration to include virtually all protected First Amendment activity. In *Lederman v. United States*, a district court explained the problem with a similarly broad regulation:

> For instance, assuming that the ban was applied literally and even-handedly, a group of congressional staffers or members of the general public who stood outside the Capitol arguing about the latest campaign finance bill, health care initiative, or welfare reform would presumably be

---

[2] United States Capitol Police Guidelines for Conducting an Event on United States Capitol Grounds, *available at* https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded/Guidelines%20and%20Application%20for%20Conducting%20an%20Event%20on%20U.S.%20Capitol%20Grounds.pdf (last accessed June 9, 2022).

> risking citation or arrest for engaging in "expressive conduct that conveys a message supporting or opposing a point of view."

89 F. Supp. 2d 29, 41 (D.D.C. 2000), *on reconsideration in part*, 131 F. Supp. 2d 46 (D.D.C. 2001). The same is true here. Law enforcement policy indicates that the prohibition applies to nearly all First Amendment activity, and neither the plain language nor legislative history supports a contrary interpretation. The extraordinary breadth of the language is a feature, not a bug that can be finessed away with the right policy, regulation, or court opinion. Section 5104(e)(2)(G) is unconstitutionally overbroad.

### III.     Section 5104(e)(2)(G) is unconstitutionally vague on its face.

The vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357–58, (1983). "Where a statute's literal scope, unaided by a narrowing [ ] [ ] interpretation, is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974). Thus, in the First Amendment context, a vagueness challenge can be brought even where a defendant may have been on notice that his particular conduct fell within the bounds of the statute. *See Thornhill v. State of Alabama*, 310 U.S. 88, 97-98 (1940).

Here, the statute does not define the offense so as to put ordinary people on notice of what is prohibited, and the language encourages arbitrary and discriminatory

7

enforcement. Ultimately, "any regulation that allows a police officer the unfettered discretion to restrict behavior merely because it 'conveys a message' or because it has a 'propensity to attract a crowd of onlookers' cannot survive a due process challenge." *Bynum*, 93 F. Supp. 2d at 58. Although the *Bynum* court placed the blame on the regulation, holding that the statute itself was constitutional, the current Capitol Police regulation is even less specific than the one in *Bynum*. That highlights how subjective the statutory language is. Evidently, guidance from a federal district court was not enough to narrow the ordinary meaning of the words in the eyes of those charged with enforcing them. It is easy to see why; "demonstrating" is an ambiguous word.

Merriam-Webster defines "demonstration" as, among other things, "an outward expression or display" or "a public display of group feelings toward a person or cause." Even using the narrower definition for the sake of argument, it remains unworkably vague for a criminal statute. Indeed, a child on a field trip remarking "We love our Capitol Police" while on a group tour of the building, or a staffer cheerfully singing "Battle Hymn of the Republic" in the atrium while walking to the office would both appear to be "demonstrating in the Capitol Building" under the dictionary definition.

It is unlikely that children on field trips or singing staffers will be arrested for parading, picketing, or demonstrating. However, "[t]he danger, of course, is that such a broadly-worded ban . . . would be selectively employed to silence those who expressed unpopular ideas regardless of whether the speaker created an obstruction or some other disturbance." *Lederman v. United States*, 89 F. Supp. 2d 29, 42 (D.D.C. 2000), *on reconsideration in part*, 131 F. Supp. 2d 46 (D.D.C. 2001).

The legislative history shows that discriminatory and arbitrary enforcement was anticipated and even intended by some lawmakers. The statutory scheme dealing with conduct in the Capitol Building was revised following a case where Howard University students sat on the floor in response to the Speaker's refusal to commit to taking action on their petition. *Smith v. D.C.*, 387 F.2d 233, 236 (D.C. Cir. 1967). While the D.C. Circuit Court did not address the constitutionality of the federal statute (the government had not invoked it), it did advise the legislature to clarify that area of the law generally: "in view of the confusion apparent in the enforcement of these and related statutes, we commend to executive and legislative authorities a review of this entire area of the law." *Id.* at 237.

In response, Congress acknowledged the confusion-in-enforcement concern and "revise[d] the statutes relating to improper conduct in the Capitol Buildings"; House Report 90-745 noted that recent federal appeals "decisions highlight[ed] the confusion surrounding the existing laws, their implementation and their administration." 1967 U.S.C.C.A.N. 1739, 1741. Representative Jerome Waldie expressed his minority view of the law as follows:

> I suggested that the qualifying phrase used in a portion of the misdemeanor section of the act, 'with intent to disrupt the orderly conduct of official business' should have been applied to all conduct sought to be controlled. The committee did not approve of this limitation. Without such a limitation, in my view, not only does the act become of questionable constitutionality, but it becomes an instrument capable of ensnaring innocent and well-meaning visitors within its provisions.

*Id.* at 1747.

9

The Congressional Record provides additional insight. Representative Colmer described some additional reason for the amendment, stating that "to be perfectly frank about this bill, it is brought about because of 'the fact that there is another one of the numerous marches upon Washington anticipated here within the next few days."[3] Congressional Record at 29388. Representative Colmer also cited the peaceful actions—sitting outside of a committee room—of the Freedom Democratic Party of Mississippi, which he described as "an extreme leftist group."[4] *Id.* He followed up that statement by contending that the bill at issue would protect the Capitol from "these misguided people who are bent on obstructing if not, in fact, destroying this, the world's most democratic form of government." *Id.* Representative Ryan noted that law seemed "defective on First Amendment grounds" and "vaguely drafted." Congressional Record at 29394.

Whatever the precise contours of the offense are, the plain statutory language "forbid[s] all demonstrative assemblages of any size, no matter how peaceful their purpose or orderly their conduct. A statute of that character is void on its face on both First and Fifth Amendment grounds." *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 587 (D.D.C.), *aff'd*, 409 U.S. 972 (1972). Here, with no clarity or specificity as to what is meant by parading, picketing, or demonstrating, the statute

---

[3] The March on the Pentagon, a massive protest against the Vietnam War, would take place two days later.

[4] The Freedom Democratic Party of Mississippi was formed as part of Freedom Summer and was supported by Dr. Martin Luther King. *See* "Mississippi Freedom Democratic Party (MFDP)," *King Encyclopedia*; Stanford University Martin Luther King, Jr. Research and Education Institute.

fails to put ordinary people on notice of what is prohibited and encourages arbitrary and discriminatory enforcement. *Cf. Thornhill v. State of Alabama*, 310 U.S. 88, 100–01 (1940) ("The vague contours of the term 'picket' are nowhere delineated."). Accordingly, section 5104(e)(2)(G) is unconstitutionally vague on its face.

### IV. Alternatively, to the extent that Section 5104(e)(2)(G) is neither substantially overbroad nor unconstitutionally vague, Count Six fails to state an offense against Mr. Mitchell.

Even if the statute were not overbroad or unconstitutionally vague, Count Six should still be dismissed. The Information fails to state an offense as to Count Six.

In evaluating whether charging documents fail to state an offense, "[t]he operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged." *United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016). Thus, charging documents "must do more than simply repeat the language of the criminal statute." *Russell v. United States*, 369 U.S. 749, 764 (1962). "To satisfy the protections that the Sixth Amendment guarantees, '*facts* are to be stated, not conclusions of law alone.'" *United States v. Miller*, No. 1:21-CR-00119 (CJN), 2022 WL 1718984, at *3 (D.D.C. May 27, 2022) (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)).

Additional interpretative rules apply when a criminal defendant challenges the statute's scope and its application to his alleged conduct. *United States v. Miller*, No. 1:21-CR-00119 (CJN), 2022 WL 823070, at *4 (D.D.C. Mar. 7, 2022), *reconsideration denied*, No. 1:21-CR-00119 (CJN), 2022 WL 1718984 (D.D.C. May 27, 2022). The first

11

is the "prudent rule of construction": courts should exercise restraint in assessing the statute's reach to ensure fair warning and give deference to legislative intent. *Dowling v. United States*, 473 U.S. 207, 214 (1985). The second is the rule of lenity, which requires courts to resolve statutory ambiguities in favor of criminal defendants. *Liparota v. United States*, 471 U.S. 419, 427 (1985).

Here, the charging document allegations are insufficient to prove Count Six even if taken as true. There are numerous possible readings of the statute, but all plausible readings of "picketing" and "demonstrating" require some form of verbal or symbolic expression of a feeling, belief, or idea. All plausible readings of parading, going with its Merriam-Webster definition and ordinary meaning, would require some sort of marching or participation in a processional. And, even if they did not, the rule of lenity would require any ambiguity to be resolved in Mr. Mitchell's favor.

While the Information accuses Mr. Mitchell of being "in a Capitol Building" on January 6, 2021, there are no specifics as to the facts and circumstances of any parading, picketing, or demonstrating. The charging documents do not allege Mr. Mitchell engaged in any form of speech or expressive conduct in the Capitol Building. The bare recitation of the statutory language is not enough. Accordingly, Count Four fails to state an offense against Mr. Mitchell and must be dismissed.

## CONCLUSION

For the reasons discussed above, the Court should dismiss Count Six of the Information and grant Mr. Mitchell such other and further relief as the Court deems just and proper.

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
ELIZABETH MULLIN
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500